## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| P.H. GLATFELTER COMPANY, | : | Case No. 1:19-cv-02215-JPW |
| | : | |
| Plaintiff, | : | Judge Wilson |
| | : | |
| v. | : | |
| | : | |
| BABCOCK & WILCOX POWER | : | |
| GENERATION GROUP, INC., f/k/a | : | |
| THE BABCOCK & WILCOX | : | |
| COMPANY, n/k/a BABCOCK & | : | |
| WILCOX ENTERPRISES, INC., et al., | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIM AGAINST GLATFELTER

The Babcock & Wilcox Company ("Defendant," "Babcock"),[1] by and

through its undersigned counsel, for its Answer to the Complaint of Plaintiff P.H.

Glatfelter Company ("Plaintiff"), state, upon knowledge as to themselves and their

---

[1] As Babcock explained in its Motion to Dismiss briefing (Dkt. 16, 21), Glatfelter incorrectly named "Babcock & Wilcox Power Generation Group, Inc., f/k/a The Babcock & Wilcox Company, n/k/a, Babcock & Wilcox Enterprises, Inc." as the defendant in the caption of its Complaint. No such entity exists. Glatfelter's contractual counterparty is Babcock & Wilcox Power Generation Group, Inc., which changed its name in 2015 to The Babcock & Wilcox Company. Dkt. 16-1, Ex. A (Certificate of Amendment). Glatfelter does not allege any involvement in the events underlying the present dispute by the separate legal entity, Babcock & Wilcox Enterprises, Inc. Dkt. 16, 21. Still, out of an abundance of caution, in its December 14, 2020 Opinion and Order, the Court declined to dismiss Babcock & Wilcox Enterprises, Inc. from the case. Dkt. 29. Therefore, to the extent Babcock & Wilcox Enterprises, Inc., is considered a party to this dispute, this Answer is also made on behalf of Babcock & Wilcox Enterprises, Inc.

own acts, and otherwise upon information and belief, as below.  Except as herein specifically and expressly admitted, each and every allegation in the Complaint is expressly denied.

To the extent the allegations in the Complaint relate to those claims that were dismissed pursuant to the Court's December 14, 2020 Opinion and Order, Defendant is not required to respond to them.  Defendant expressly preserves, and does not waive, its right to assert that allegations in the Complaint are no longer in the case and are inappropriate matters for discovery and trial.

1.      Defendant denies the allegations in Paragraph 1 of the Complaint, except admits that (1) Glatfelter[2] is a global supplier of engineered material; (2) Glatfelter previously owned a paper mill in Spring Grove, PA (the "Spring Grove Mill"); and (3) the Spring Grove Mill previously used a steam generation system to generate electricity.  Defendant lacks information sufficient to form a belief as to the truth or falsity of the allegations regarding Glatfelter's reasons for undertaking to replace boilers at the Spring Grove Mill.  Paragraph 1 also states a legal conclusion as to the requirements of unspecified EPA regulations applicable to the Spring Grove Mill to which no response is required; to the extent a response is required, Defendant denies the allegations.

---

[2] Capitalized terms that are not otherwise defined herein shall have the meaning ascribed to them in the Complaint.

2.      Defendant denies the allegations in Paragraph 2, except admits that Glatfelter issued a Request for Proposal to which Babcock responded and that Babcock entered into a contract with Glatfelter.

3.      Defendant denies the allegations in Paragraph 3 of the Complaint.

4.      Defendant denies the allegations in Paragraph 4 of the Complaint.

5.      Paragraph 5 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 5, except admits that Babcock closed its West Point, Mississippi manufacturing facility, and that portions of the construction of components for the boilers was subcontracted to third parties.

6.      Defendant denies the allegations in Paragraph 6 of the Complaint.

7.      Paragraph 7 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 7.

8.      Defendant denies the allegations of Paragraph 8 of the Complaint.

9.      Defendant denies the allegations of Paragraph 9 of the Complaint.

10.     Defendant states that Paragraph 10 of the Complaint calls for a legal conclusion for which no response is required.

11.     Defendant states that Paragraph 11 of the Complaint calls for a legal conclusion for which no response is required.  To the extent a response is required,

Defendant denies the allegations in Paragraph 11, except admits that Babcock delivered the boilers to the Spring Grove Mill located in York County, Pennsylvania, and performed related work in this district pursuant to the parties' Agreement.

12.    Defendant states that Paragraph 12 of the Complaint calls for a legal conclusion for which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 12, except admits that the parties' Construction Agreement dated May 15, 2015, states that "[a]ny litigation arising hereunder or related hereto must be brought before either the York County, Pennsylvania Court of Common Pleas or the United States District Court for the Middle District of Pennsylvania."

13.    Defendant admits the allegations in Paragraph 13 of the Complaint, except denies that Glatfelter's corporate headquarters is in York, Pennsylvania.

14.    Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 14 of the Complaint.

15.    Defendant denies the allegations of Paragraph 15 of the Complaint, except admits that the Spring Grove Mill generates its own power and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Glatfelter's practices with respect to excess power generated at the Spring Grove Mill.

16.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 16 of the Complaint.

17.     Defendant denies the allegations of Paragraph 17 of the Complaint, except admits that in 2013, EPA promulgated a final rule updating the National Emissions Standards for Hazardous Air Pollutants for Area Sources to include standards for industrial, commercial, and institutional boilers.

18.     Defendant denies the allegations of Paragraph 18 of the Complaint.

19.     Defendant denies the allegations of Paragraph 19 of the Complaint.

20.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 20 of the Complaint.

21.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 21 of the Complaint.

22.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 22 of the Complaint.

23.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 23 of the Complaint.

24.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 24 of the Complaint.

25.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 25 of the Complaint, except

admits that Glatfelter issued a Request for Proposal in September 2014 and that the Request for Proposal included the design, fabrication, and installation of two natural gas- and oil-fired boilers.

26.    Defendant admits the allegations of Paragraph 26 of the Complaint, except lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations related to responses to its RFP that Glatfelter may have received from anyone other than Babcock.

27.    Defendant denies the allegations of Paragraph 27 of the Complaint, except lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations concerning Glatfelter's motivations, understandings, and reasoning, and the allegations concerning proposals that Glatfelter may have received from anyone other than Babcock.

28.    Defendant denies the allegations in Paragraph 28 of the Complaint, except lacks the information or knowledge sufficient to form a belief as to the truth or falsity of the allegations concerning Glatfelter's motivation to select Babcock as its boiler contractor, and admits Glatfelter selected Babcock as its boiler contractor.

29.    Defendant denies the allegations in Paragraph 29 of the Complaint, except admits that Glatfelter and Babcock engaged in negotiations regarding the Agreement and entered into a Construction Agreement dated May 15, 2015, and

that the Construction Agreement includes the design, fabrication, and installation of two boilers.

30.    Defendant admits that the language quoted in Paragraph 30 of the Complaint appears in the Construction Agreement but denies that Paragraph 30 accurately characterizes the parties' agreement and denies that the quoted language can be understood in isolation from the remainder of the Contract.

31.    Defendant denies the allegations in Paragraph 31 of the Complaint.

32.    Defendant admits that the language quoted in Paragraph 32 of the Complaint appears in the Construction Agreement but denies that the quoted language is a complete reproduction of the sentence in which it appears, denies that Paragraph 32 accurately characterizes the parties' agreement, and denies that the quoted language can be understood in isolation from the remainder of the Construction Agreement.

33.    Defendant admits that the first and second passages quoted in Paragraph 33 of the Complaint appear in the Construction Agreement but denies that the third quoted passage accurately quotes the Construction Agreement, denies that Paragraph 33 accurately characterizes the parties' agreement, and denies that the quoted language can be understood in isolation from the remainder of the Construction Agreement.

34.     Defendant admits that the language quoted in Paragraph 34 of the Complaint appears in the Construction Agreement but denies that Paragraph 34 accurately characterizes the parties' agreement and denies that the quoted language can be understood in isolation from the remainder of the Construction Agreement.

35.     Defendant admits that the language quoted in Paragraph 35 of the Complaint appears in the Construction Agreement but denies that Paragraph 35 accurately characterizes the parties' agreement and denies that the quoted language can be understood in isolation from the remainder of the Construction Agreement.

36.     Defendant admits that Babcock provided a performance guarantee specifying certain performance criteria but denies that Paragraph 36 of the Complaint accurately characterizes the parties' agreement and denies that the performance guarantee can be understood in isolation from the remainder of the Construction Agreement.

37.     Defendant admits that Glatfelter agreed to pay Babcock over eleven million dollars but denies that Paragraph 37 otherwise completely and accurately characterizes the parties' agreement.

38.     Defendant admits that the language quoted in Paragraph 38 of the Complaint appears in the Construction Agreement but denies that the quoted language is a complete reproduction of the sentence in which it appears, denies that Paragraph 38 accurately characterizes the parties' agreement, and denies that the

quoted language can be understood in isolation from the remainder of the Construction Agreement.

39.  Defendant denies the allegations in Paragraph 39 of the Complaint, except lacks information or knowledge sufficient to form a belief as to the truth or falsity concerning whether Babcock "appeared to be on track" to meet the requirements of the Contract Documents.

40.  Defendant denies the allegations in Paragraph 40 of the Complaint, except admits that in 2015, Glatfelter engaged contractors to demolish and dispose of the existing boiler house and to begin the construction of a boiler facility, and lacks information or knowledge sufficient to form a belief as to the truth or falsity concerning Glatfelter's "plans."

41.  Defendant denies the allegations in Paragraph 41 of the Complaint, except admits that on May 9, 2016, Babcock informed Glatfelter that fabrication had temporarily halted.

42.  Defendant denies the allegations in Paragraph 42 of the Complaint.

43.  Defendant denies the first sentence of Paragraph 43 of the Complaint to the extent it uses undefined terms that are reasonably susceptible of differing interpretations ("typically," "a company the size of Babcock"), and otherwise denies the allegations in Paragraph 43 of the Complaint.

44.  Defendant denies the allegations in Paragraph 44 of the Complaint.

45.     Defendant denies the allegations in Paragraph 45 of the Complaint, except admits that by May 9, 2016, Glatfelter had paid Babcock a portion of the Purchase Price.

46.     Defendant denies the allegations in Paragraph 46 of the Complaint.

47.     Defendant denies the allegations in Paragraph 47 of the Complaint, except admits that piping in the boiler facility was temporarily removed and then replaced

48.     Defendant denies the allegations in Paragraph 48 of the Complaint, except admits that Glatfelter redesigned portions of the boiler facility.

49.     Defendant denies the allegations in Paragraph 49 of the Complaint.

50.     Defendant denies the allegations in Paragraph 50 of the Complaint.

51.     Defendant denies the allegations in Paragraph 51 of the Complaint.

52.     Defendant denies the allegations in Paragraph 52 of the Complaint, except admits that Babcock sent a letter to Glatfelter on June 16, 2016, describing how changed conditions at the site and circumstances beyond Babcock's control, including an outage imposed by Glatfelter, had impacted Babcock's ability to complete its work.

53.     Defendant admits that Glatfelter sent Babcock a July 1, 2016 letter, responding to Babcock's June 16, 2016 letter, and that Glatfelter stated in its letter that it rejected the assertions and reasoning in Babcock's June 16, 2016 letter, and

that Glatfelter stated in its letter that it would not provide any additional time to perform the Work.  Defendant otherwise denies the allegations in Paragraph 53 of the Complaint.

54.     Defendant denies the allegations in Paragraph 54 of the Complaint.

55.     Defendant denies the allegations in Paragraph 55 of the Complaint.

56.     Defendant denies the allegations in Paragraph 56 of the Complaint.

57.     Defendant denies the allegations in Paragraph 57 of the Complaint, except admits that Glatfelter informed Babcock that delays could impact the Project.

58.     Defendant denies the allegations in Paragraph 58 of the Complaint.

59.     Defendant denies the allegations in Paragraph 59 of the Complaint.

60.     Defendant denies the allegations in Paragraph 60 of the Complaint, except admits that all boiler modules were on-site no later than August 2016.

61.     Defendant denies the allegations in Paragraph 61 of the Complaint, except admits that one of the two boilers was first fired on January 5, 2017.

62.     Defendant denies the allegations in Paragraph 62 of the Complaint.

63.     Defendant denies the allegations in Paragraph 63 of the Complaint, except lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Glatfelter's taxes.

64.     Defendant denies the allegations in Paragraph 64 of the Complaint.

65.   Defendant denies the allegations in Paragraph 65 of the Complaint.

66.   Defendant denies the allegations in Paragraph 66 of the Complaint, except admits that throughout 2017, Babcock attempted to address any issues raised by Glatfelter, and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning what Glatfelter discovered and when.

67.   Defendant denies the allegations in Paragraph 67 of the Complaint, except admits that during 2017, Babcock was able to address issues related to steam temperature, steam impurity, the use of inside air for combustion, and control settings.

68.   Defendant denies the allegations in Paragraph 68 of the Complaint and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning what Glatfelter discovered and when.

69.   Defendant denies the allegations in Paragraph 69 of the Complaint, except admits that in mid-2017, cracks and hotspots appeared on the boilers, and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning what Glatfelter discovered and when.

70.   Defendant admits that the language quoted in Paragraph 70 of the Complaint appears in the Construction Agreement but denies that Paragraph 70

accurately characterizes the parties' agreement and denies that the quoted language can be understood in isolation from the remainder of the Contract.

71.     Defendant denies the allegations in Paragraph 71 of the Complaint, except admits that in April 2017, both boilers were shut down.

72.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 72 of the Complaint.

73.     Defendant denies the allegations in Paragraph 73 of the Complaint and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning what Glatfelter anticipated.

74.     Defendant denies the allegations in Paragraph 74 of the Complaint, except admits that after April 2017, Babcock continued working to address issues raised by Glatfelter.

75.     Defendant denies the allegations in Paragraph 75 of the Complaint.

76.     Defendant denies the allegations in Paragraph 76 of the Complaint, except admits that Babcock requested to perform, and did perform an inspection of the boilers in March 2018.

77.     Defendant denies the allegations in Paragraph 77 of the Complaint, except admits that the March 2018 inspection identified then-existing issues related to boiler casing surface temperatures.

78.     Defendant denies the allegations in Paragraph 78 of the Complaint, except admits that Babcock recommended that the issue related to boiler casing surface temperatures be addressed.

79.     Defendant denies the allegations in Paragraph 79 of the Complaint and lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning whether "results" were "satisfactory" or what, if any, expenses Glatfelter had to incur.  Defendant admits that Babcock made efforts to address issues raised by Glatfelter and requested access to the boilers in 2018 and 2019.

80.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 80 of the Complaint.

81.     Defendant admits that Babcock performed work on one of the boilers between August and December of 2018 to address issues related to the insulation and refractory, vibrations in the fan system, and adding a bypass damper and expansion joint, and otherwise denies the allegations in Paragraph 81.

82.     Defendant denies the allegations in Paragraph 82 of the Complaint.

83.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 83 of the Complaint.

84.     Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 84 of the Complaint.

85.     Paragraph 85 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 85.

86.     Defendant incorporates by reference its responses to all preceding paragraphs of this Answer as though the same were set forth at length herein.

87.     Defendant admits that the Construction Agreement between Glatfelter and Babcock is valid, binding, and enforceable, and that the Construction Agreement includes the design, fabrication, and installation of two boilers at the Spring Grove Mill but denies that Paragraph 87 completely and accurately characterizes the parties' agreement.

88.     Defendant denies the allegations in Paragraph 88 of the Complaint, except admits that Glatfelter has made certain payments to Babcock under the parties' agreement.

89.     Defendant denies the allegations in Paragraph 89 of the Complaint.

90.     Defendant denies the allegations in Paragraph 90 of the Complaint.

91.     Defendant denies the allegations in Paragraph 91 of the Complaint.

92.     Defendant denies the allegations in Paragraph 92 of the Complaint.

93.     Defendant incorporates by reference its responses to all preceding paragraphs of this Answer as though the same were set forth at length herein.

94.     Paragraph 94 relates to a claim that has been dismissed.  Therefore, no response is required.  To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

95.     Paragraph 95 relates to a claim that has been dismissed.  Therefore, no response is required.  To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

96.     Paragraph 96 relates to a claim that has been dismissed.  Therefore, no response is required.  To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

97.     Paragraph 97 relates to a claim that has been dismissed.  Therefore, no response is required.  To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

98.     Paragraph 98 relates to a claim that has been dismissed.  Therefore, no response is required.  To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

99.     Paragraph 99 relates to a claim that has been dismissed.  Therefore, no response is required.  To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

100.   Defendant incorporates by reference its responses to all preceding paragraphs of this Answer as though the same were set forth at length herein.

101.   Paragraph 101 relates to a claim that has been dismissed.  Therefore, no response is required.   To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

102.   Paragraph 102 relates to a claim that has been dismissed.  Therefore, no response is required.   To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

103.   Paragraph 103 relates to a claim that has been dismissed.  Therefore, no response is required.   To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

104.   Paragraph 104 relates to a claim that has been dismissed.  Therefore, no response is required.   To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

105.   Paragraph 105 relates to a claim that has been dismissed.  Therefore, no response is required.   To the extent a response is deemed required for any reason, Defendant denies the allegations of Paragraph 94 as a matter of fact and law.

106.   Defendant incorporates by reference its responses to all preceding paragraphs of this Answer as though the same were set forth at length herein.

107.   Defendant denies the allegations in Paragraph 107 of the Complaint.

108.   Defendant denies the allegations in Paragraph 108 of the Complaint.

109.   Defendant denies the allegations in Paragraph 109 of the Complaint.

110.   Defendant denies the allegations in Paragraph 110 of the Complaint.

111.   Defendant denies the allegations in Paragraph 111 of the Complaint.

112.   Defendant incorporates by reference its responses to all preceding paragraphs of this Answer as though the same were set forth at length herein.

113.   Defendant denies the allegations in Paragraph 113 of the Complaint.

114.   Defendant denies the allegations in Paragraph 114 of the Complaint.

115.   Defendant denies the allegations in Paragraph 115 of the Complaint.

116.   Defendant denies the allegations in Paragraph 116 of the Complaint.

117.   Defendant denies the allegations in Paragraph 117 of the Complaint.

## **AFFIRMATIVE AND OTHER DEFENSES**

Defendant asserts the following affirmative and other defenses, without assuming the burden of proof with respect to any issue as to which applicable law places the burden of proof upon Plaintiffs.  Defendant expressly reserves the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

## FIRST DEFENSE

Plaintiffs' Complaint, and every claim stated therein, fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims against Defendant are barred, in whole or in part, by doctrines of estoppel.

## THIRD DEFENSE

Plaintiff's claims against Defendant are barred, in whole or in part, by waiver.

## FOURTH DEFENSE

Plaintiff's Complaint must be dismissed for lack of standing.

## FIFTH DEFENSE

Plaintiff's claims against Defendant are barred, in whole or in part, because Plaintiff would be unjustly enriched if it were allowed to recover damages.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant's alleged conduct was lawful and caused no harm.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Babcock satisfied all of its obligations under the contract.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages are speculative and impossible to ascertain or allocate.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to perform its obligations under the Agreement.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's actions unduly hindered or made impossible Defendant's performance under the Agreement.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the parol evidence rule.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the limitation of liability clause in the Agreement.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of impracticability, impossibility, frustration of purpose, force majeure, and to the extent any nonperformance was based on causes beyond Babcock's control.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by prevention of performance.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's anticipatory repudiation of the contract.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendant acted at all times and in all material respects reasonably and in good faith.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff filed its Complaint in breach of an agreement between the parties.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by its failure to mitigate damages.

## NINETEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by recoupment.

### TWENTIETH DEFENSE

Plaintiff's claims for Promissory Estoppel and Unjust Enrichment are barred, in whole or in part, because a valid and enforceable contract between the parties exists that relates to the same subject matter as these claims.

### TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, by any applicable statutes of limitations and laches.

### TWENTY-SECOND DEFENSE

Defendant reserves the right to rely upon and assert all other defenses that may become available or apparent during the course of discovery in this proceeding and hereby reserves the right to amend its Answer to state any and all such affirmative defenses.

### COUNTERCLAIM

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant The Babcock & Wilcox Company ("Babcock"), by and through its undersigned counsel, hereby alleges and asserts the following counterclaim against Plaintiff and Counterdefendant P.H. Glatfelter Company ("Glatfelter"):

## PARTIES, JURISDICTION, AND VENUE

1.      Counterclaim Plaintiff Babcock is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1200 East Market St., Suite 650, Akron, Ohio 44305.

2.      On information and belief, Counterclaim Defendant Glatfelter is a Pennsylvania corporation with a principal place of business located at 4350 Congress St., Charlotte, North Carolina 28209.

3.      This Court has jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332, as it is between citizens of different states and its amount in controversy exceeds $75,000.

4.      This Court has personal jurisdiction over Glatfelter at least by virtue of Glatfelter's consent to the personal jurisdiction of this Court by filing the Complaint against Babcock in this Court.

5.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Babcock's counterclaim occurred in this judicial district, and because Glatfelter and Babcock contractually agreed to litigate in this Court ("Any litigation arising hereunder or related hereto must be brought before either the York County, Pennsylvania Court of Common Pleas or the United States District Court for the Middle District of Pennsylvania").

## FACTS

6.      On May 15, 2015 Glatfelter and Babcock's predecessor, Babcock & Wilcox Power Generation Group, Inc., entered into a Construction Agreement (the "Agreement") pursuant to which Babcock was to perform certain specified Work[3] regarding the design, fabrication, and installation of two boilers for Glatfelter's Spring Grove, Pennsylvania facility (the "Spring Grove Mill"), as part of Glatfelter's project to upgrade its facility to comply with environmental regulations.

7.      The Agreement is a valid, binding, and enforceable contract.  A true and correct copy of the Agreement, with pertinent Exhibits, is attached as Exhibit A.

8.      In exchange for the Work from Babcock, Glatfelter agreed to pay the Purchase Price of $11,705,601, subject to adjustment under the terms of the Agreement.  Construction Agreement § 1(M); *Id*. at Exhibit B-2.

9.      The Agreement includes provisions to compensate Babcock for cost increases it incurs arising out of changes to the Work over the duration of the project.  The Agreement provides that "[c]hanges in the Work may be accomplished after execution of the Agreement, and without invalidating the

---

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

Agreement, by Change Order . . ." Construction Agreement § 8(A).  If any change ordered by Glatfelter increases the cost to Babcock of performing the Work, Babcock is entitled to an upward adjustment to the Purchase Price.  Construction Agreement § 8(C).  If the parties are unable to agree on an adjustment, Babcock is entitled to an adjustment "on the basis of reasonable expenditures . . . of those performing the Work attributable to the change, including . . . an amount for overhead and profit."  *Id*.

10.    The Agreement also requires an adjustment of the Purchase Price "[i]f [Babcock] is delayed at any time in the commencement or progress of the Work by an act or neglect of Glatfelter . . . or of an employee of [Glatfelter], or of a separate contractor employed by Glatfelter; or by changes ordered in the Work; or by . . . unusual delay in deliveries, unavoidable casualties or other causes beyond [Babcock's] control . . . ."  Construction Agreement § 9(B).

11.    During the project, Babcock's ability to complete its Work was repeatedly hindered by interference from Glatfelter or its other contractors and other conditions outside of Babcock's control.  For example, in April 2016, Babcock communicated to Glatfelter that it would need free and clear access to the portion of the Spring Grove Mill in which it would be installing equipment in the coming weeks and months, and the dimensional clearances that would be required to enable Babcock's hauling subcontractor to place equipment on-site.  Though

Glatfelter had committed to provide the free and clear access that Babcock needed and acknowledged Babcock's requirements, when Babcock came on-site to perform its Work, it found Glatfelter's other contractors obstructing the space. Another Glatfelter contractor had even installed piping in the space that Babcock had informed Glatfelter that Babcock would need to allow its hauling subcontractor to set equipment in place. Interference by Glatfelter and its other contractors repeatedly delayed Babcock's Work over the course of the project, costing Babcock both time and money, as Babcock would have to pay its personnel and subcontractors for the additional time and effort required to overcome obstacles imposed by Glatfelter while minimizing the impact on Babcock's schedule.

12.     Furthermore, Glatfelter ordered several changes to Babcock's Work during the project. For example, Glatfelter requested numerous design and material changes, ordered Babcock to suspend work while other contractors performed their work in congested areas at the Spring Grove Mill, and requested additional testing that was beyond the scope of the Work. During construction, Babcock also discovered that portions of the project that were Glatfelter's responsibility were not built in compliance with the designs that Glatfelter had communicated to Babcock, costing Babcock time and money in its effort to perform its Work.

13.     On November 22, 2016, Babcock sent Glatfelter a letter summarizing certain of the changes to the Work that Glatfelter had ordered, identified as Change Nos. 1 – 7, along with their price and schedule impacts.  These changes increased the price by $759,796.  A true and correct copy of the November 22, 2016 letter regarding change orders is attached as Exhibit B.

14.     Glatfelter has refused to pay for the costs associated with these changes in the Work or the delays imposed by its interference with Babcock's Work.  Further, Glatfelter has not paid Babcock the full amount of the milestone payments it was obligated to make under the Agreement, notwithstanding Babcock's achievement of all progress payment milestones under the Agreement. *See* Construction Agreement at Exhibit B-2.  To date, Glatfelter has paid Babcock less than $9.5 million, at least $3 million less than it owes.

## FIRST CAUSE OF ACTION
### Breach of Contract

15.     Babcock repeats and realleges the allegations in Paragraphs 1 through 14 as if fully set forth herein.

16.     Babcock and Glatfelter entered into a valid, binding, and enforceable Agreement, whereby, among other obligations, Glatfelter agreed to pay the costs associated with changes in Work, delays caused by Glatfelter and its other contractors, and to pay the full Purchase Price to Babcock.

17.    Babcock has performed under the Agreement by complying with Glatfelter's demanded changes in the Work, accommodating Glatfelter's deviations from the designs they communicated, and delivering boilers that the Spring Grove Mill uses for their intended purpose.

18.    Glatfelter breached the Agreement when it refused to pay the amounts owed to Babcock under the Agreement.

19.    As a direct and proximate cause of these breaches of the Agreement, Babcock has suffered and will continue to suffer harm estimated at over $3 million, in an amount to be calculated at trial.

WHEREFORE, Counterclaim Plaintiff Babcock demands judgment in its favor and against Counterclaim Defendant Glatfelter, and requests that this Court enter an Order for all damages as permitted by law, reasonable attorneys' fees and costs, and all such other relief as the Court may deem just and proper.

Respectfully submitted,


/s/ Bridget E. Montgomery
Bridget E. Montgomery, Esquire (PA ID 56105)
ECKERT SEAMANS CHERIN &
    MELLOTT, LLC
213 Market Street, 8th Floor
Harrisburg, PA  17101
Telephone:  717.237.6054
Facsimile:  717.237.6019
bmontgomery@eckertseamans.com

and


*/s/ Rollo C. Baker*
_____

R. Brian Timmons, Esq. (*admitted PHV*)
Rollo C. Baker, Esq. (*admitted PHV*)
Brian Campbell, Esq. (*admitted PHV*)
Jessie Ratcliffe, Esq. (*admitted PHV*)
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Telephone:   (212) 849 7000
briantimmons@quinnemanuel.com
rollobaker@quinnemanuel.com
briancampbell@quinnemanuel.com
jessieratcliffe@quinnemanuel.com

Date:  January 11, 2021          *Attorneys for Defendant The Babcock*
                                        *& Wilcox Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 11th day of January, 2021, I delivered a copy of the foregoing ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT BABCOCK WILCOX POWER GENERATION GROUP, INC**.** upon the persons indicated below, via this Court's ECF system and/or United-States First-Class mail, which service satisfies the requirements of the Federal Rules of Civil Procedure.

Daniel E. Rhynhart, Esquire
Stephanie C. Chomentowski, Esquire
Melanie S. Carter, Esquire
BLANK ROME LLP
One Logan Square
Philadelphia, PA  19103

*Attorneys for Plaintiff*

/s/ *Bridget E. Montgomery*

Bridget E. Montgomery, Esquire

*Counsel for Defendant, The Babcock
& Wilcox Company*